UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-CV-80667-ROSENBERG/BRANNON

FAIR HOUSING CENTER OF THE
GREATER PALM BEACHES, INC., *et al.*,

    Plaintiffs,

v.

SONOMA BAY COMMUNITY
HOMEOWNERS ASSOCIATION, INC., *et al.*,

    Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendants, Sonoma Bay Community Homeowners Association, Inc., Jeanne Kulick, Marsh Harbour Maintenance Association, Inc., Prestige Quality Management, LLC, Kimberly Jackson, and James Nyquist's, Motion for Summary Judgment and Memorandum of Law [DE 276]. The Court has carefully reviewed Defendants' Motion, Plaintiffs' Response in Opposition thereto [DE 308], and Defendants' Reply [DE 317], and is otherwise fully advised in the premises. For the reasons set forth below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

    **I.**    **INTRODUCTION**

This is an action for discrimination on the basis of familial status in the rental of housing in violation of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the Florida Fair Housing Act, Fla. Stat. § 760.20 *et seq.* Plaintiffs include the Fair Housing Center of the Greater Palm Beaches, Inc. (the "Fair Housing Center") and a number of current and former residents of the Sonoma Bay and Marsh Harbour condominium developments, both of which are located in

Riviera Beach, Florida. Following the dismissal of various parties named and claims asserted in this action, the remaining Defendants include: (1) Sonoma Bay Community Homeowners Association, Inc. ("Sonoma Bay HOA"), the entity responsible for the operation and management of the Sonoma Bay condominium development, including the creation and execution of the development's Rules and Regulations and the approval or denial of Rental Applications; (2) Jeanne Kulick, who served as president of the Sonoma Bay HOA from 2010 until the 2015 annual election, was elected vice president at the 2015 annual election, and has since returned to the position of president; (3) Emanuel Management Services, LLC, a property management company whose principal, Niambi Emanuel, served as the licensed community association manager ("LCAM") for the Sonoma Bay condominium development from July 2012 through March 2014; (4) Marsh Harbour Maintenance Association, Inc. d/b/a Marsh Harbour Master Association ("Marsh Harbour HOA"), the entity responsible for the operation and management of the Marsh Harbour condominium development, including the creation and execution of the development's Rules and Regulations and the approval or denial of Rental Applications; (5) Prestige Quality Management, LLC, the property management company currently responsible for the Marsh Harbour condominium development; (6) Kimberly Jackson, the owner of Prestige Quality Management, LLC, and the current LCAM for the Marsh Harbour condominium development; and (7) James Nyquist, the former LCAM for both the Sonoma Bay and Marsh Harbour condominium associations.

In their Second Amended Complaint, Plaintiffs allege violations of three provisions of the federal Fair Housing Act and three nearly identical provisions of the Florida Fair Housing Act.[1] *See* DE 93. In relevant part, these provisions make it unlawful to: (i) refuse to rent after the

---

[1] "Florida's Fair Housing Act is the state counterpart to the Federal Fair Housing Act Amendments. The FFHA is patterned after the FHA and courts have recognized that it is to be construed consistently with federal law." *Milsap*

2

making of a bona fide offer, or refuse to negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of familial status;[2] (ii) discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status;[3] or (iii) make, print, or publish, or cause to be made, printed, or published, any notice, statement, or advertisement with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation or discrimination.[4]

Specifically, Plaintiffs allege that Defendants' policies and practices—including the use of Rental Applications that require prospective tenants to submit report cards for persons under the age of 18, and the enactment and enforcement of certain Rules and Regulations concerning the attire and behavior of persons under the age of 18—constitute discrimination against families with children in violation of these statutory provisions. *See* DE 93. In addition to monetary damages and other forms of relief, Plaintiffs request entry of a declaratory judgment finding that Defendants are in violation of the federal Fair Housing Act and the Florida Fair Housing Act; entry of an Order requiring each Defendant to take appropriate actions to ensure that the activities complained of are completely stopped immediately and not engaged in again by it or any of its agents; and entry of a permanent injunction directing Defendants and their directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described in Plaintiffs' Second Amended Complaint,

---

*v. Cornerstone Residential Mgmt., Inc.*, No. 05-60033-CIV-JOHNSON, 2010 WL 427436, at *2 (S.D. Fla. Feb. 1, 2010) (citing *Dornbach v. Holley,* 854 So. 2d 211, 213 (Fla. Dist. Ct. App. 2002); *Loren v. Sasser,* 309 F.3d 1296, 1300 n.9 (11th Cir. 2002)).
[2] *See* 42 U.S.C. § 3604(a); Fla. Stat. § 760.23(1).
[3] *See* 42 U.S.C. § 3604(b); Fla. Stat. § 760.23(2).
[4] *See* 42 U.S.C. § 3604(c); Fla. Stat. § 760.23(3).

including but not limited to prominent notice to all tenants and homeowners correcting any and all related unlawful provisions in their leases and ownership documents, and to prevent similar occurrences in the future.[5] *See* DE 93 at 27–28.

In their Motion for Summary Judgment, Defendants[6] make four separate arguments: (1) Defendants have revised their allegedly discriminatory Rental Applications and Rules and Regulations, rendering Plaintiffs' claims for declaratory and injunctive relief moot; (2) certain Plaintiffs have moved out of the Sonoma Bay and Marsh Harbour condominium developments, rendering their claims for declaratory and injunctive relief moot; (3) Plaintiffs lack standing to assert claims for declaratory and injunctive relief against Defendant James Nyquist, who is no longer associated with either the Sonoma Bay or Marsh Harbour condominium development; and (4) Plaintiffs' claims against Defendant James Nyquist in his capacity as LCAM for Sonoma Bay are time-barred. *See* DE 276.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.*

---

[5] In a civil action brought pursuant to the federal Fair Housing Act, the Court may grant as relief "any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)" upon finding that a discriminatory housing practice has occurred or is about to occur. *See* 42 U.S.C. § 3613(c). Similarly, in a civil action brought pursuant to the Florida Fair Housing Act, the Court "shall issue an order prohibiting the practice and providing affirmative relief from the effects of the practice, including injunctive and other equitable relief . . . ." *See* Fla. Stat. § 760.35(2).

[6] The Motion for Summary Judgment presently before the Court was filed jointly by all Defendants except Emanuel Management Services, LLC.

4

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

### III.   LEGAL ANALYSIS

As an initial matter, the Court notes that the parties appear to have conflated the doctrines of standing and mootness in addressing the first three of Defendants' four arguments identified above. As the Supreme Court has acknowledged, such confusion is understandable in light of its "repeated statements that the doctrine of mootness can be described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). Nevertheless, the Supreme Court has clarified "that the description of mootness as 'standing set in a time frame' is not comprehensive." *See id.* at 190. While "[t]he Constitution's case-or-controversy limitation on federal judicial authority underpins both our standing and our mootness jurisprudence," the two inquiries differ in critical respects. *Id.* at 181 (internal citation omitted). While the Court may dispose of a claim for lack of standing where there has not yet been sufficient injury to justify adjudication, the doctrine of mootness applies where injuries once sufficient to confer standing have passed. *See, e.g.*, 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3529 (3d ed. 1998). Accordingly, the Court distinguishes between issues of standing and mootness in the following analysis, despite the parties' failure to do so.

A. <u>Defendants' Revised Rental Applications and Rules and Regulations</u>

The following facts are undisputed: Beginning sometime in 2010 or later, Rental Applications for both the Sonoma Bay and Marsh Harbour condominium developments included a requirement that prospective tenants provide copies of report cards for persons under the age of 18 (the "Report Card Requirement"). *See* DE 276 ¶¶ 20, 22; *id.* at 61, 75. Beginning sometime in 2010 or later, the Rules and Regulations for both the Sonoma Bay and Marsh Harbour condominium developments required (1) that all residents wear proper attire when walking on the streets of the development, no boys should be shirtless, and girls must wear a cover up over a bathing suit when walking to the pool (the "Proper Attire Rule"), (2) that there would be no loitering—congregating on the streets of the development—at any time (the "Loitering Rule"), and (3) that persons under the age of 18 must be in their home or on their patio after sunset (the "Curfew Rule").[7] *See id.* ¶¶ 21, 23; *id.* at 70–71, 84.

Defendants assert—and Plaintiffs do not dispute—that the Rental Applications and the Rules and Regulations for both the Sonoma Bay and Marsh Harbour condominium developments were revised *prior to* the commencement of the instant case[8] as follows: Marsh Harbour revised its Report Card Requirement to apply to anyone in school, regardless of age; both Sonoma Bay and Marsh Harbour revised their Proper Attire Rules to apply to all residents, regardless of age; and Sonoma Bay eliminated its Loitering Rule. *See id.* ¶¶ 27–30; *id.* at 16–44. Defendants further

---

[7] The parties dispute whether a written Curfew Rule was ever in effect for residents of the Sonoma Bay condominium development. *See* DE 276 ¶ 24; DE 308 at 2; DE 317 at 2–3. The Court notes that the Rules and Regulations applicable to residents of Marsh Harbour include, under the heading "Curfew," an explicit statement that "[a]ll persons under the age of 18 must be in their home or back patio after sunset," in addition to a more general statement, under the heading "Loitering," that "[a]fter dark all children should be in their home or on their patio." *See* DE 267 at 84. The Rules and Regulations applicable to residents of Sonoma Bay, however, include only the general statement, under the heading "Loitering," that "[a]fter dark all children should be in their home or on their patio." *See id.* at 71. This is a distinction without a difference. The Court concludes that persons under the age of 18 were subject to a written Curfew Rule in both the Sonoma Bay and Marsh Harbour condominium developments.
[8] The initial Complaint was filed on May 20, 2014. *See* DE 1.

6

assert—and Plaintiffs do not dispute—that the Rules and Regulations for Marsh Harbour were again revised *after* the commencement of the instant case so that Marsh Harbour's Loitering Rule would apply to all residents, regardless of age. *See id.* ¶ 31; *id.* at 29–44.

The parties disagree with respect to why these revisions were made immediately prior to and after the commencement of the instant case. Defendants assert that it was "not because of litigation, to deprive the Court of jurisdiction, or to avoid liability. Rather, the requirements and Rules and Regulations were changed based on the evolution and positive change in the community and to ensure conformity with federal and state law." *Id.* ¶ 32. Defendants cite the Affidavit of Jeanne Kulick, *id.* at 52–55, and the Affidavit of Kimberly Jackson, *id.* at 56–59, as support for this assertion. Plaintiffs, on the other hand, contend that Defendants "made changes to the Rules and Regulations in the anticipation of litigation, after [the Fair Housing Center] filed an administrative complaint against Sonoma Bay in 2013." *See* DE 308 at 2. Plaintiffs go on to state that the Fair Housing Center filed its administrative complaint against Sonoma Bay with the Palm Beach Office of Equal Opportunity on May 2, 2013, and formally withdrew the complaint on December 13, 2013, when Sonoma Bay failed to respond to conciliation efforts. *See id.* at 3. Plaintiffs have submitted copies of the complaint and withdrawal, in addition to a portion of the deposition testimony of Vince Larkin, as evidence. *See* DE 308-1; DE 308-4; DE 308-5.

The parties further disagree with respect to the effect of Defendants' revisions to the Rental Applications and Rules and Requirements. Defendants argue that, due to these revisions, Plaintiffs' claims for declaratory and injunctive relief were rendered moot[9] prior to the commencement of the instant case, as there is no longer a live case or controversy with respect to which the Court can provide meaningful relief. *See* DE 276 ¶¶ 5-6; *id.* at 10-12. Plaintiffs argue

---

[9] Defendants also argue that Plaintiffs lack standing for declaratory and injunctive relief due to these revisions. *See* DE 276 at 11. As far as the Court is able to discern, the parties consistently argue mootness and lack of standing as though the two concepts are interchangeable.

in response that case law provides an exception to the doctrine of mootness for cases, such as the instant case, in which the challenged conduct is capable of repetition yet evades review. *See* DE 308 at 5. Regardless of the applicability of that exception, Plaintiffs further argue that Defendants continue to enforce the Report Card Requirement and other discriminatory Rules and Regulations in both the Sonoma Bay and Marsh Harbour condominium developments, despite the revisions thereto. *See id.* at 6. In support of that argument, Plaintiffs cite examples of applications submitted by prospective tenants and notices of violation issued after the commencement of the instant case. *See* DE 308-6.

    i.    <u>Standing</u>

The effect of the revisions made by Defendants to the Rental Applications and the Rules and Regulations prior to the commencement of the instant case implicates the issue of Plaintiffs' standing, not mootness. *See Friends of the Earth*, 528 U.S. at 189–90.

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth*, 528 U.S. at 185 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

"In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege

facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *Lyons*, 461 U.S. 95, 102 (1983)).

> Consistent with the "cases" and "controversies" requirement of Article III, the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an "actual controversy." Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties. "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Thus, in order for this Court to have jurisdiction to issue a declaratory judgment . . . [Plaintiffs] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future.

*Id.* at 1347 (quoting *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985)) (internal citations omitted). Similarly, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001) (internal quotation marks omitted).

In response to a motion for summary judgment, a plaintiff cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts proving that he or she has standing. *See RB Jai Alai, LLC v. Sec'y of Florida Dep't of Transp.*, No. 6:13-CV-1167-ORL-40, 2015 WL 4040607, at *4 (M.D. Fla. June 30, 2015) (quoting *Lujan*, 504 U.S. at 561).

While it is undisputed that—prior to the commencement of the instant case—Defendants revised certain aspects of the Rental Applications and the Rules and Regulations challenged by Plaintiffs, the Court concludes that Plaintiffs have nevertheless presented sufficient evidence of their standing to assert claims for declaratory and injunctive relief. Specifically, Plaintiffs have

9

submitted copies of Rental Applications for both the Sonoma Bay and Marsh Harbour condominium developments that include the challenged Report Card Requirement despite the fact that these Rental Applications were completed and submitted by the prospective tenants after revisions thereto were made and after the instant case was commenced. *See* DE 308-6 at 2, 30, 42, 49, 74. Plaintiffs have also submitted copies of report cards provided by prospective tenants in connection with these Rental Applications. *See, e.g.*, *id.* at 80–81, 101–08. Finally, Plaintiffs have submitted a copy of a violation notice from Defendant Kimberly Jackson to a resident of Marsh Harbour regarding "unsupervised children," suggesting that Defendants continued to enforce at least some of the challenged Rules and Regulations—in particular, Marsh Harbour's Loitering Rule—after the revisions thereto were made and after the instant case was commenced. *See id.* at 127–28. This evidence establishes a substantial likelihood that Plaintiffs continued to suffer the injuries alleged at the time the instant case was commenced and afterward. Summary judgment against Plaintiffs on the issue of standing to assert claims for declaratory and injunctive relief is therefore inappropriate.

    ii.    <u>Mootness</u>

The effect of the revisions made by Defendants to the Rental Applications and the Rules and Regulations after the commencement of the instant case implicates the issue of mootness, not Plaintiffs' standing. *See Friends of the Earth*, 528 U.S. at 189–90.

As a general rule, "[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief. If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183 (11th Cir. 2007) (quoting *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*,

382 F.3d 1276, 1281–82 (11th Cir. 2004)). However, "[t]he doctrine of voluntary cessation provides an important exception to the general rule that a case is mooted by the end of the offending behavior." *Id.* (quoting *Troiano*, 382 F.3d at 1282) (internal quotation marks omitted).

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. [I]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Friends of the Earth*, 528 U.S. at 189 (internal quotation marks and citations omitted).

> [I]n determining mootness where a private defendant has voluntarily ceased the conduct at issue . . . [the Supreme Court and the Eleventh Circuit Court of Appeals] have found relevant at least the following three factors: (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability.

*Sheely*, 505 F.3d at 1184.

The application of these factors to the undisputed facts and evidence before the Court compels the conclusion that it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth*, 528 U.S. at 189. First, in light of the fact that the challenged Rental Applications and Rules and Regulations were enacted and enforced by Defendants over a period of several years, the Court concludes that the challenged conduct was a continuing and deliberate practice. This weighs in favor of finding a reasonable expectation of recurrence. *See Sheely*, 505 F.3d at 1184–85 (citing *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 n.5 (1953)). Second, the timing of the majority of the revisions to the Rental Applications and the Rules and Regulations—during the few months between the Fair

Housing Center's withdrawal of its administrative complaint in December of 2013 and commencement of the instant case in May of 2014—suggests that Defendants' cessation of the offending conduct may not have been motivated by a genuine change of heart, but instead timed to anticipate suit. Again, this weighs in favor of finding a reasonable expectation of recurrence. *Id.* at 1186 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998)). Finally, Defendants have not explicitly acknowledged liability; Defendants state only that the revisions were made "based on the evolution and positive change in the community and to ensure conformity with federal and state law." *See* DE 276 ¶ 32; *id.* at 52–59. Once again, this "failure to acknowledge wrongdoing suggests that cessation is motivated merely by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains." *See Sheely*, 505 F.3d at 1187 (citing *W. T. Grant*, 345 U.S. at 632). Accordingly, Plaintiffs' claims for declaratory and injunctive relief are not moot.

   B.  <u>Plaintiffs No Longer Residing in Sonoma Bay or Marsh Harbour</u>

It is undisputed that Plaintiffs Leann Carr and her grandson N.N. no longer reside in Sonoma Bay, and that both left Sonoma Bay after the commencement of the instant case. *See* DE 276 ¶ 33; DE 308 at 2; 308-3. However, the parties have presented conflicting evidence concerning the reasons why these Plaintiffs left Sonoma Bay. Defendants cite Leann Carr's deposition testimony, in which she states that she left Sonoma Bay because she was living alone in a three-bedroom apartment, and Sonoma Bay did not have any smaller apartments available. *See* DE 276 at 49–50; DE 317 at 21. Plaintiffs point to the sworn Declaration of Leann Carr, in which she states that she and her grandson left Sonoma Bay due to the "anti-child policies and rules" to which they were subjected while residing there. *See* DE 308-3.

Similarly, it is undisputed that Plaintiffs Golda Muselaire and her children I.M., A.M.,

and Z.M. no longer reside in Marsh Harbour, and that they left Marsh Harbour after the commencement of the instant case. *See* DE 276 ¶ 33; DE 308-10. However, the parties have presented conflicting evidence concerning the reasons why these Plaintiffs left Marsh Harbour. Defendants cite I.M.'s deposition testimony, in which he stated that he and his family left Marsh Harbour due to an increase in the amount of their rent. *See* DE 317 at 26. Plaintiffs point to the sworn Declaration of Golda Muselaire, in which she states that she and her family left Marsh Harbour due to the "anti-child policies and rules" to which they were subjected while residing there. *See* DE 308-10.

Finally, it is undisputed that Plaintiff Ta'Jenae Williams no longer resides in Marsh Harbour, and that she left Marsh Harbour after the commencement of the instant case. *See* DE 276 ¶ 33; DE 308 at 8. However, the parties have presented no evidence concerning the reasons why this Plaintiff left Marsh Harbour. Defendants argue only that, "[u]pon information and belief, after she turned 18 years old, started attending college, and met her boyfriend, she moved in with him." *See* DE 317 at 7. Plaintiffs make only a broad, unsupported statement that Ta'Jenae Williams, along with the other Plaintiffs who left Sonoma Bay and Marsh Harbour, "moved out of their respective communities as a result of Defendants' FHA violations." *See* DE 308 at 8.

As a general rule, a plaintiff's claims for declaratory and prospective injunctive relief under the Fair Housing Act are rendered moot when that plaintiff moves out of the allegedly discriminatory housing community. *See, e.g.*, *Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999). Plaintiffs argue, however, that they may proceed under the "futile gesture" exception. Specifically, Plaintiffs assert that they are members of a group protected by the Fair Housing Act, that they left the Sonoma Bay and Marsh Harbour condominium developments as a result of Defendants' discrimination against them, and that they would return to Sonoma Bay and Marsh

Harbour if Defendants were enjoined from committing further discriminatory acts and if those responsible for creating, enforcing, and promulgating the discriminatory provisions are no longer in office with the homeowners associations. *See* DE 308 at 8–9 (citing *Pinchback v. Armistead Homes Corp.*, 689 F. Supp. 541 (D. Md. 1988); *Darby v. Ridge*, 806 F. Supp. 170, 174 (E.D. Mich. 1992)).

While application of the futile gesture exception in the context of fair housing claims is not unprecedented,[10] the Court concludes that the exception is inapplicable here. Plaintiffs have not cited—and the Court has not found—a single case in which a plaintiff was permitted to proceed with litigation under the futile gesture exception on a fair housing claim rendered moot by the plaintiff's decision not to renew his or her lease subsequent to the filing of a lawsuit. Rather, the typical scenario involves a plaintiff who deliberately decides not to apply for housing in a particular community in the first instance because he or she is aware of discriminatory policies that would render such an application entirely futile.

> [I]f [the defendant] should announce its policy of discrimination by a "Whites Only" sign, its "victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs." This is the crux of the futile gesture doctrine. The discrimination is no less because [the defendant] conveyed its message by subtle means. The victims who were reliably informed of [the defendant's] policy would not be limited to those who approached [the defendant] and were rebuffed. [Plaintiff], who was unwilling to engage in the futile gesture of submitting an offer for the property, is nonetheless a victim of discrimination."

*Pinchback*, 907 F.2d at 1452 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977)) (internal citation omitted). Whatever Plaintiffs' reasons for leaving Sonoma Bay and

---

[10] *See, e.g.*, *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1450–52 (4th Cir. 1990) (affirming district court's application of futile gesture doctrine in context of housing discrimination claim); *Darby v. Heather Ridge*, 806 F. Supp. 170, 174 (E.D. Mich. 1992); *Long v. Aronov Realty Mgmt., Inc.*, 645 F. Supp. 2d 1008, 1025 n.35 (M.D. Ala. 2009); *Milsap v. Cornerstone Residential Mgmt., Inc.*, No. 05-60033-CIV, 2008 WL 1994840, at *3 n.4 (S.D. Fla. May 5, 2008) order vacated in part on reconsideration, No. 05-60033-CIV-JOHNSON, 2010 WL 427436 (S.D. Fla. Feb. 1, 2010) (citing *Resnick v. Magical Cruise Co., Ltd.*, 148 F. Supp. 2d 1298, 1302 (M.D. Fla. 2001)).

Marsh Harbour, there is no evidence that attempting to renew their leases would have been a futile gesture. Accordingly, Plaintiffs Leann Carr; N.N., by and through his mother, Heather Abrams; Golda Muselaire; I.M., A.M., and Z.M., by and through their parent, Golda Muselaire; and Ta'Jenae Williams's claims for declaratory and injunctive relief were rendered moot at the time their leases with the Sonoma Bay and Marsh Harbour communities expired.

C. Standing to Assert Claims Against Defendant James Nyquist

It is undisputed that James Nyquist, who was at one time the LCAM for both the Sonoma Bay and Marsh Harbour condominium developments, resigned from both positions prior to the commencement of the instant case. *See* DE 276 ¶ 26. Defendants argue that Plaintiffs therefore lack standing to seek declaratory and injunctive relief against him. Plaintiffs have failed to respond to this argument and have submitted no evidence to support a finding that Plaintiffs in fact do have such standing. In the absence of any evidence of a substantial likelihood that Plaintiffs continued to suffer injury at the hands of James Nyquist at the time the instant case was commenced or afterward, the Court concludes that Plaintiffs lack standing to seek declaratory and injunctive relief against him. *See Malowney*, 193 F.3d at 1346 (citing *Lyons*, 461 U.S. at 102); *RB Jai Alai*, 2015 WL 4040607, at *4 (quoting *Lujan*, 504 U.S. at 561).

D. Statute of Limitations as to Defendant James Nyquist

The federal Fair Housing Act provides that "[a]n aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice . . . ." 42 U.S.C. § 3613(a)(1)(A). "The computation of such 2-year period shall not include any time during which an administrative proceeding . . . was pending with respect to a complaint or charge . . . based upon such discriminatory housing

practice." 42 U.S.C. § 3613(a)(1)(B). Likewise, under Florida's Fair Housing Act, "[a] civil action shall be commenced no later than 2 years after an alleged discriminatory housing practice has occurred." Fla. Stat. § 760.35(1).

Defendants argue that Plaintiffs' claims against Defendant James Nyquist in his capacity as the licensed community association manager ("LCAM") for Sonoma Bay are time-barred. *See* DE 276 at 12–13. Specifically, Defendants argue that "[t]he alleged discrimination committed by Mr. Nyquist ended when he resigned as the LCAM for Sonoma Bay in July of 2012," more than two years prior to the date on which Plaintiffs joined James Nyquist as a Defendant in this case.[11] *See id.* at 13. As support for this argument, Defendants have submitted the Affidavit of Jeanne Kulick, in which Ms. Kulick states that "James Nyquist resigned as the LCAM for Sonoma Bay in July of 2012." *See id.* at 52–55. In opposition, Plaintiffs point out that James Nyqust testified at his deposition that he left employment at Sonoma Bay at the "end of 2012." *See* DE 308 at 10; DE 308-8, Deposition of James Nyquist at 85:18. Defendants counter, however, that James Nyquist later confirmed during that same deposition that he last worked at Sonoma Bay in August of 2012. *See* DE 317 at 8; *id.* at 31, Deposition of James Nyquist at 205:7–12. James Nyquist's earlier testimony that he worked for Sonoma Bay until the end of 2012 is therefore insufficient to create a genuine dispute of material fact.

Plaintiffs also state that James Nyquist continued to contribute to the enforcement of the discriminatory rules and policies by staying in touch with and advising other Defendants. *See* DE 308 at 10 n.2. For example, Plaintiffs point to the deposition of Defendant Marsh Harbour's 30(b)(6) deponent, Patricia Makarowa, who testified that she had spoken to Mr. Nyquist the day prior to her deposition. DE 308-11, Deposition of Patricia Makarowa at 42. This portion of the

---

[11] Plaintiffs added James Nyquist as a Defendant in their Second Amended Complaint filed on November 4, 2014. *See* DE 93.

deposition testimony provides no evidence that Ms. Makarowa gave any testimony to that effect.

It is therefore undisputed that James Nyquist left his position as LCAM for Sonoma Bay more than two years prior to the date on which Plaintiffs joined him as a Defendant in this case. Accordingly, Plaintiffs' claims against James Nyquist are time-barred. *See* 42 U.S.C. § 3613(a)(1)(A); Fla. Stat. § 760.35(1).

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants, Sonoma Bay Community Homeowners Association, Inc., Jeanne Kulick, Marsh Harbour Maintenance Association, Inc., Prestige Quality Management, LLC, Kimberly Jackson, and James Nyquist's, Motion for Summary Judgment and Memorandum of Law [DE 276] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Any revisions made by Defendants to the Rental Applications and the Rules and Regulations for the Sonoma Bay and Marsh Harbour condominium developments do not deprive Plaintiffs of standing to assert claims for declaratory and injunctive relief, nor do they render Plaintiffs' claims for declaratory and injunctive relief moot. As to this issue, Defendants' Motion is **DENIED**.

2. Plaintiffs Leann Carr; N.N., by and through his mother, Heather Abrams; Golda Muselaire; I.M., A.M., and Z.M., by and through their parent, Golda Muselaire; and Ta'Jenae Williams's claims for declaratory and injunctive relief were rendered moot at the time their leases with the Sonoma Bay and Marsh Harbour communities expired. As to this issue, Defendants' Motion is **GRANTED**.

3. Plaintiffs lack standing to assert claims for declaratory and injunctive relief against Defendant James Nyquist. As to this issue, Defendant's Motion is **GRANTED**.

4. All of Plaintiffs' claims against Defendant James Nyquist in his capacity as LCAM for Sonoma Bay are time-barred. As to this issue, Defendant's Motion is **GRANTED**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 1st day of October, 2015.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record