UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:14-CV-80667-ROSENBERG/BRANNON

FAIR HOUSING CENTER OF THE
GREATER PALM BEACHES, INC.,
et al.,

      Plaintiffs,

v.

SONOMA BAY COMMUNITY
HOMEOWNERS ASSOCIATION, INC.,
et al.,

      Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment [DE 280]. The Motion has been fully briefed. The Court has reviewed the documents in the case file and is fully advised in the premises. Plaintiffs' Motion is granted in part because some of Defendants' policies clearly discriminate based on familial status and denied in part because some of Defendants' policies must be considered by a trier of fact.

## I.    INTRODUCTION

This is an action for discrimination on the basis of familial status in the rental of housing in violation of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the Florida Fair Housing Act, Fla. Stat. § 760.20 *et seq.* Plaintiffs include the Fair Housing Center of the Greater Palm Beaches, Inc. and a number of current and former residents of the Sonoma Bay and Marsh Harbour condominium developments, both of which are located in Riviera Beach, Florida and both of which are Defendants in this case.

In their Second Amended Complaint, Plaintiffs allege violations of three provisions of the federal Fair Housing Act and three nearly identical provisions of the Florida Fair Housing Act.[1] *See* DE 93.  Specifically, Plaintiffs allege that Defendants' policies and practices constitute discrimination against families with children in violation of these statutory provisions.  *See* DE 93.

The following facts are undisputed: beginning sometime in 2010 or later, rental applications for both the Sonoma Bay and Marsh Harbour condominium developments included a requirement that prospective tenants provide copies of report cards for persons under the age of 18 (the "Report Card Requirement").  Beginning sometime in 2010 or later, the Rules and Regulations for both the Sonoma Bay and Marsh Harbour condominium developments required (1) that all residents wear proper attire when walking on the streets of the development, no boys should be shirtless, and girls must wear a cover up over a bathing suit when walking to the pool (the "Proper Attire Rule"), (2) that there would be no loitering—congregating on the streets of the development—at any time (the "Loitering Rule"), and (3) that persons under the age of 18 must be in their home or on their patio after sunset (the "Curfew Rule").[2]

In addition to monetary damages and other forms of relief, Plaintiffs request entry of a declaratory judgment finding that Defendants are in violation of the federal Fair Housing Act and the Florida Fair Housing Act; entry of an Order requiring each Defendant to take appropriate

---

[1] "Florida's Fair Housing Act is the state counterpart to the Federal Fair Housing Act Amendments.  The FFHA is patterned after the FHA and courts have recognized that it is to be construed consistently with federal law." *Milsap v. Cornerstone Residential Mgmt., Inc.*, No. 05-60033-CIV-JOHNSON, 2010 WL 427436, at *2 (S.D. Fla. Feb. 1, 2010) (citing *Dornbach v. Holley,* 854 So. 2d 211, 213 (Fla. Dist. Ct. App. 2002); *Loren v. Sasser,* 309 F.3d 1296, 1300 n.9 (11th Cir. 2002)).

[2] Although the parties dispute whether a written Curfew Rule was ever in effect for residents of the Sonoma Bay condominium development, the Court notes that the Rules and Regulations applicable to residents of Marsh Harbour included, under the heading "Curfew," an explicit statement that "[a]ll persons under the age of 18 must be in their home or back patio after sunset," in addition to a more general statement, under the heading "Loitering," that "[a]fter dark all children should be in their home or on their patio."  The Rules and Regulations applicable to residents of Sonoma Bay, however, included only the general statement, under the heading "Loitering," that "[a]fter dark all children should be in their home or on their patio."  This is a distinction without a difference, as discussed more fully *infra*.

2

actions to ensure that the activities complained of are completely stopped immediately and not engaged in again by it or any of its agents; and entry of a permanent injunction directing Defendants and their directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described in Plaintiffs' Second Amended Complaint, including but not limited to prominent notice to all tenants and homeowners correcting any and all related unlawful provisions in their leases and ownership documents, and to prevent similar occurrences in the future.[3]  *See* DE 93 at 27-28.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.

---

[3] In a civil action brought pursuant to the federal Fair Housing Act, the Court may grant as relief "any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)" upon finding that a discriminatory housing practice has occurred or is about to occur. *See* 42 U.S.C. § 3613(c). Similarly, in a civil action brought pursuant to the Florida Fair Housing Act, the Court "shall issue an order prohibiting the practice and providing affirmative relief from the effects of the practice, including injunctive and other equitable relief . . . ." *See* Fla. Stat. § 760.35(2).

*See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III.   ANALYSIS

Plaintiffs brought the instant case on the premise that Defendants have engaged in a pattern and practice of familial status discrimination that violates 42 U.S.C. §§ 3604(a)-(c), which prohibits the following:

> **(a)** To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> **(b)** To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

> **(c)** To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

Familial status is defined under the Act as "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent or another person having legal custody of such individual or individuals. . . ." 42 U.S.C. § 3602(k). To establish that Defendants have violated the Fair Housing Act, Plaintiffs point to four different rules: the Report Card Requirement that applied during the rental application process, the Proper Attire Rule, the Loitering Rule, and the Curfew Rule. Plaintiffs argue that these Rules and Regulations entitles to them to judgment as a matter of law under 42 U.S.C. § 3604(a) (by virtue of the Report Card Requirement), 42 U.S.C. § 3604(b) (by virtue of the Proper Attire Rule, Loitering Rule, and Curfew Rule), and 42 U.S.C. § 3604(c) (by virtue of all of Defendants' Rules and Regulations). Each subsection is addressed in turn.

### 1. Whether Defendants have violated 42 U.S.C. § 3604(a) as a matter of law.

To establish that Defendants have violated § 3604(a), Plaintiffs argue that Defendants' Report Card Requirement is equivalent to a "refus[al] to sell or rent . . . or to refuse to negotiate for the sale or rental of . . . a dwelling to any person because of . . . familial status." 42 U.S.C. § 3604(a). Plaintiffs' argument is that rental applications would be denied if no report cards were attached and that the Report Card Requirement discouraged families with children from applying. The Court finds that Plaintiffs have failed to show that they are entitled to summary judgment as to the Report Card Requirement for two reasons.

5

First, Plaintiffs have failed to provide the Court with any authority that a motion for partial summary judgment may be granted in the absence of specific evidence of discrimination under § 3604(a) (i.e., evidence Defendants refused to rent a dwelling).  Specific evidence of discrimination is unnecessary to determine that a rule is discriminatory with respect to § 3604(b) and § 3604(c) (at least with respect to a motion for partial summary judgment like the one before the Court), as more fully set forth in the Court's analysis of those subsections, *infra*.  Subsection 3604(a), however, addresses a concrete refusal to sell or rent a dwelling or a refusal to negotiate for the occupancy of a dwelling, and the case law cited by Plaintiff reinforces this distinction.  For example, Plaintiffs cite to *Whyte v. Alston Management*, No. 10-81041, 2011 U.S. Dist. LEXIS 158389 (S.D. Fla. Nov. 1, 2011), but in that case a family was expressly evicted because children were living on the premises.  *Id.* at *13.  *Whyte* did not examine § 3604(a) in the abstract by examining a rule or policy independent of evidence of discrimination.  Similarly, Plaintiffs cite to *Blomgren v. Ogle*, 850 F. Supp. 1427, 1437 (E.D. Wash. 1993), but that case also considered a § 3604(a) claim in light of specific evidence of discrimination.  Furthermore, Defendants cite to *Martin v. Palm Beach Atlantic Association*, 696 So. 2d 919, 920 (Fla. Dist. Ct. App. 1997), wherein a homeowner's association had a discriminating rule in place that prohibited the occupancy of apartments by children under the age of twelve.  Notably, the court in *Martin* did not limit its discussion to damages in light of the facially discriminating rule, but went so far as to conclude that § 3604(a) had not been substantively violated by virtue of the fact that no defendant had denied plaintiff the opportunity to rent.  *Id.* at 921-22.

Second, even if the Court were to accept Plaintiffs' premise that their sought-after relief can be granted under § 3604(a) on summary judgment, Plaintiffs' argument still fails.  Plaintiffs

6

assert they are entitled to summary judgment under § 3604(a) by drawing an equivalency between denying an application for being incomplete (for failure to attach a report card)[4] and denying an application based upon familial status. Under Plaintiffs' logic, a rule would discriminate against families under § 3604(a) if the rule required the names of children to be disclosed on an application because, if the names were not disclosed, the application would be denied as incomplete. The mere fact that report cards are required does not mean that housing will be refused—which is the gravamen of § 3604(a). Furthermore, to the extent Plaintiffs emphasize the burden report-card production imposed on families and the potential this requirement had to discourage applicants from applying, Plaintiffs have provided no persuasive authority that this requirement warrants judgment as a matter of law nor have Plaintiffs provided relevant evidence in support of their position. For all of the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment as to the Report Card Requirement under § 3604(a) is **DENIED**.[5]

### 2. Whether Defendants have violated 42 U.S.C. § 3604(b) as a matter of law.

To establish that Defendants have violated § 3604(b), Plaintiffs argue that Defendants' Proper Attire Rule, Loitering Rule, and Curfew Rule all discriminated against Plaintiffs "in the terms, conditions, or privileges of . . . rental of a dwelling or in the provision of services or facilities in connection therewith . . . because of familial status." 42 U.S.C. § 3604(b). Prohibited discrimination includes "[l]imiting the use of privileges, services or facilities associated with a dwelling because of . . . familial status . . . [of a] tenant or a person associated with him or her." 24

---

[4] If a family with children did not attach report cards to their application, presumably the application could be denied as incomplete. *See* DE 280-9 at 2 ("If incomplete the application will not be processed and can be denied."). The Report Card Requirement is silent with respect to the scenario where a child does not have report cards.

[5] It necessarily follows that to the extent Plaintiffs seek relief for the periods of time when the Report Card Requirement was either amended to apply to students of any age or eliminated entirely, Plaintiffs' Motion for Partial Summary Judgment is denied.

C.F.R. § 100.65(b)(4).  "[A] plaintiff makes out a prima facie case of intentional discrimination under the FHA merely by showing that a protected group has been subjected to explicitly differential—i.e. discriminatory—treatment." *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995).

Defendants' Proper Attire Rule begins by stating "[a]ll Residents must wear proper clothing when walking on the streets of [Sonoma Bay and Marsh Harbour]." DE 280-6 at 3; DE 280-13 at 4.  The rule therefore facially applies to all residents, not just children.  The next sentence of the rule states "[n]o Boys should be shirtless and Girls must wear a cover up over a bathing suit when walking to the pool." *Id.*  Plaintiff does not cite to specific evidence that a child was treated differently than an adult by virtue of being a "Boy" or "Girl," and instead Plaintiffs appear to rely upon the wording of the rule itself to establish "that a protected group has been subjected to explicitly differential—i.e. discriminatory—treatment." *See Bangerton*, 46 F.3d at 1501.  In response, Defendants have proffered evidence that the use of the words "Boy" and "Girl" was meant to be (and was) enforced against all males and all females.  *See* DE 302-3 at 7.

When the second sentence in the Proper Attire Rule is read in conjunction with the first and is viewed in the light most favorable to Defendants, there is sufficient ambiguity in the meaning of the wording of the rule that it is unclear whether Plaintiffs have established a prima facie case of familial discrimination.  Therefore, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment with respect to the Proper Attire Rule.

Defendants' Loitering Rule reads: "There will be no loitering—congregating on the streets of [Sonoma Bay and Marsh Harbour] at any time." DE 280-6 at 4; 280-13 at 4.  The next sentence

of the Loitering Rule, "After dark all children should be in their home or on their patio," is essentially the same as Defendant Marsh Harbour's Curfew Rule and is addressed below. *Id.*

Defendant Marsh Harbour's Curfew Rule, "All persons under the age of 18 must be in their home or back patio after sunset," applies solely to children. DE 280-13 at 4. Because this rule and the Loitering Rule restrictions on "all children" are limited to children and because the rules treat children differently than adults—children are essentially confined to their home after dark—Plaintiffs have, at a minimum, established a prima facie case of intentional discrimination under § 3604(b). The burden therefore shifts to Defendants to articulate "a legitimate, non-discriminatory justification for the challenged policy." *Fair Hous. Council v. Ayres*, 855 F. Supp. 315, 318 (C.D. Cal. 1994) (citing *United States v. Badgett*, 976 F.2d 1176, 1178 (8th Cir. 1992)). Case law has developed in this area of law in the state of California, where federal district courts have consistently held that, in addition to articulating a non-discriminatory justification, a defendant must also show that the rule or policy was the least restrictive means to achieve the desired end. *See Iniestra v. Cliff Warren Inv., Inc.*, 886 F. Supp. 2d 1161, 1167 (C.D. Cal. 2012); *Mathews v. Arrow Wood LLC*, No. EDCV-07-1316, 2009 WL 8659593, at *8 (C.D. Cal. 2009); *Fair Hous. Congress v. Weber*, 993 F. Supp. 1286, 1292 (C.D. Cal. 1997). The Court has not found any published decision disputing that a "least restrictive means" test should be applied in the context of a facially discriminatory rule or policy enacted by a private housing complex or association.

Though it is difficult to ascertain the precise contours of Defendants' opposition on this point, the Court concludes that the primary motivations behind Defendants' Loitering Rule and Curfew Rule were safety concerns and crime prevention:

9

> [T]he police were called to the property several times every day to respond to theft, vandalism, and other criminal acts.
>
> [I]n 2011, there were 254 break-ins in Sonoma Bay. . . . Loitering by children and lack of parental supervision was also a major concern in the community.
>
> . . .
>
> The objective of the [loitering rule] was to curtail crime by older minors and to keep all children safe.

DE 302-1 at 4-5. The Court is unpersuaded that Defendants' justifications, safety and crime prevention, are legitimate, non-discriminatory justifications sufficient to rebut Plaintiffs' prima facie claim, at least as applied to the Loitering Rule and Curfew Rule in this case. The rules restricted all children to their homes at sunset without any exception whatsoever. Defendants' justifications are not legitimate because Defendants' justifications are premised upon the assumption that the concept of "safety" may be invoked—not in response to a tangible dangerous condition, such as a pool—but for the intangible purpose of general crime prevention. While the Court can evaluate a tangible threat to safety for legitimacy, such as the conditions surrounding pool access, the Court cannot evaluate the legitimacy of an intangible goal of general crime prevention. *See Cmty. Hous., Inc. v. City of Boise*, 490 F.3d 1041, 1050 (9th Cir. 2006) ("[A] defendant must show . . . that the restriction . . . responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes."). Defendants provide no concrete evidence[6] of statistics or arrest records showing that the children in their communities were so

---

[6] Defendants' second-hand reference to "254 break-ins" in 2011 and the police being summoned "every day" is not sufficient evidence to establish a legitimate justification for the Loitering Rule and Curfew Rule. Even assuming that 254 break-ins did occur in 2011 and that police were summoned every day, Defendants offer no evidence as to how many of these break-ins were executed by minors (instead of adults), to say nothing of Defendants' lack of evidence connecting the crimes in question to minors residing in their own communities (as opposed to minors living elsewhere); nor do Defendants provide any evidence in the form of crime statistics, arrest records, or testimony from law enforcement officers (which presumably would have been readily available when police were summoned "every day").

10

heavily predisposed to crime that mass confinement of those children was in response to a legitimate safety concern. Evidence of this sort is what the law requires because a legitimate justification cannot be based on mere stereotypes. *See id.* Furthermore, Defendants' justifications are additionally not legitimate because Defendants' fail to articulate how a seventeen-year-old needs to be confined in his or her home less they be in danger of injuring themselves. Finally, Defendants' justifications are also discriminatory insofar as Defendants assume that the children affected by the rule had a propensity to commit criminal acts and that the children's parents were incapable of supervision of outside activities.

Even if the justifications for the Loitering Rule and Curfew Rule—safety and crime prevention—were valid and non-discriminatory, these are not rules that use the least restrictive means to accomplish their goals. If the rules were to be read in the strictest fashion, a child would not be permitted to exit a burning apartment, attend night school, or go to work at night, nor could a child exit his or her home under the supervision and protection of parents or guardians. The plain text of the rules confines children to their home for the duration of the night. The discrimination inherent in these provisions is patently obvious. Suffice it to say that rules far less restrictive than the rules at bar have been found to be discriminatory. *See Iniestra*, 886 F. Supp. 2d at 1167 (rejecting a rule that prevented children under 18 from entering a pool without an adult); *Pack v. Fort Washington II, et al.*, 689 F. Supp. 2d 1237, 1246-47 (E.D. Cal. 2009) (concluding that a curfew for children under 18 was discriminatory); *Weber*, 993 F. Supp. at 1291-93 (rejecting a rule that prevented children from playing outside of their home as well as a rule that limited children to occupancy of first-floor units). Although Defendants have provided evidence that the Loitering Rule and Curfew Rule were not enforced, this evidence goes to damages and not to liability.

11

Plaintiffs seek no adjudication with respect to the manner in which Defendants enforced their Rules and Regulations or the damages those rules caused. For all of the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED** as to the Loitering Rule and Curfew Rule[7] and **DENIED** as to the Proper Attire Rule.[8]

### 3. Whether Defendants have violated 42 U.S.C. § 3604(c) as a matter of law.

To establish that Defendants have violated § 3604(c), Plaintiffs argue that Defendants' Report Card Requirement, Proper Attire Rule, Loitering Rule, and Curfew Rule are all "printed or published . . . notice[s] . . . or advertisement[s] . . . with respect to the . . . rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status." 42 U.S.C. § 3604(c). This provision applies "to all written or oral notices or statements by a person engaged in the sale or rental of a dwelling." 24 C.F.R. § 200.75(b). Unlike § 3604(b), § 3604(c) does not require discriminatory intent and is not analyzed under a burden-shifting paradigm; instead, courts consider what an "ordinary reader['s] . . . natural interpretation" would be when reading the relevant advertisement or statement. *See United States v. Hunter*, 459 F.2d 205, 215 (4th Cir. 1974); *Pack*, 689 F. Supp. 2d at 1245; *Reese v. Miami-Dade Cnty.*, 242 F. Supp. 2d 1292, 1302 (S.D. Fla. 2002). At first impression, Plaintiffs' claims under both § 3604(b) and § 3604(c) appear to be duplicitous insofar as litigation over discriminatory rules and policies are generally brought under § 3604(b) because "[a] majority of cases dealing with violations of section 3604(c) do not involve rules and regulations of tenancy. Instead, most section 3604(c) discussions involve allegations of 'steering' protected individuals away from certain housing opportunities and/or

---

[7] The Court's ruling does not extend to the periods of time when the Loitering Rule was either amended to apply to every resident or abolished entirely.
[8] It necessarily follows that to the extent Plaintiffs seek relief for the periods of time when the Proper Attire Rule was amended to clearly apply to all residents, Plaintiffs' Motion for Partial Summary Judgment is denied.

obviously discriminatory statements made to prospective renters." *Pack*, 689 F. Supp. 2d at 1245. However, rules and policies have, at times, been analyzed under a both a subsection (b) and subsection (c) framework. *See id.; Weber*, 993 F. Supp. at 1286.  Accordingly, the Court considers Plaintiffs' claims under an "ordinary reader" standard.

With respect to Defendants' Report Card Requirement that report cards must be included with any rental application that includes children, Plaintiffs argue that an ordinary reader could conclude that the statement indicates a preference for families without children or otherwise discriminates against that group.  Conversely, Defendants argue that an ordinary reader could conclude that the statement does not indicate a preference for families without children.  For example, the requirement could be construed as a preference for persons of good character.  Notably, the same employment application requires adults to submit to a background check. When a child's requirement to provide a report card is placed in context with an adult's requirement to submit to a background check, an ordinary reader could reasonably conclude that the same type of vetting is being applied to both adults and children—a type of vetting related to the character of the applicant.  To be sure, such a process is problematic insofar as a child could be of excellent character with poor grades, or some children may have disabilities that preclude a standard report card, but the imperfect correlation embedded in Defendants' methodology does not, by itself, require entry of summary judgment in Plaintiffs' favor when the Court must view all facts in the light most favorable to Defendants.  Furthermore, an ordinary reader could reasonably conclude that the Report Card Requirement is used as a means of identification, a position which finds support with respect to Defendant Sonoma Bay's requirement for a "School ID / Report

13

Card." DE 280-2 at 3. In summary, the Court concludes that this issue must be resolved by a trier of fact.

The Court similarly concludes that a trier of fact must decide the issue of Defendants' Proper Attire Rule. For all of the reasons previously stated, the wording of the Proper Attire Rule is unclear. An ordinary reader could conclude, as Plaintiffs argue, that the reference to "Boys" and "Girls" in the rule is a reference to male and female children, however, as Defendants argue, the statement (when read in conjunction with the first sentence of the rule) also could be construed to apply to "Boys" and "Girls" of all ages—essentially all males and all females. Accordingly, the Court concludes that this issue must be resolved by a trier of fact.

With respect to Defendants' Loitering Rule and Curfew Rule, Plaintiffs cite to no case law considering curfew provisions, but the Court's own research suggests that federal courts that have considered curfew and loitering rules resembling the rules at bar have found that an ordinary reader *would* conclude that the rules discriminate against children. *See Pack*, 689 F. Supp. 2d at 1246-47. This Court agrees—there is no reasonable, alternative reading other than (i) the rules only affect children and (ii) children are treated differently than adults. The content of the rules is such that an ordinary reader would clearly conclude that the rules discriminate against children. Defendants' opposition on this point is limited to evidence of intent which is irrelevant for the purposes of a § 3604(c) analysis. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Partial

Summary Judgment as to Defendants' Loitering Rule and Curfew Rule[9] and **DENIES** Plaintiffs' Motion as it pertains to Defendants' Report Card Requirement and Proper Attire Rule.[10]

## IV.  CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Partial Summary Judgment [DE 280] is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Motion is **DENIED** as to Plaintiffs' arguments under 42 U.S.C. § 3604(a);

2. The Motion is **DENIED** as to Plaintiffs' arguments under 42 U.S.C. § 3604(b) as to the Proper Attire Rule;

3. The Motion is **GRANTED** as to Plaintiffs' arguments under 42 U.S.C. § 3604(b) as to the Loitering Rule and Curfew Rule;

4. The Motion is **DENIED** as to Plaintiffs' arguments under 42 U.S.C. § 3604(c) as to the Report Card Requirement and Proper Attire Rule; and

5. The Motion is **GRANTED** as to Plaintiffs' arguments under 42 U.S.C. § 3604(c) as to the Loitering Rule and Curfew Rule.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 1st day of October, 2015.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

---

[9] The Court's ruling does not extend to the periods of time when the Loitering Rule was either amended to apply to every resident or abolished entirely.

[10] It necessarily follows that to the extent Plaintiffs seek relief for the periods of time when the Proper Attire Rule or Report Card Requirement were amended to apply to all residents, Plaintiffs' Motion for Partial Summary Judgment is denied.