UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-CV-80667-ROSENBERG/BRANNON

FAIR HOUSING CENTER OF THE
GREATER PALM BEACHES, INC., *et al.*,

      Plaintiffs,

v.

SONOMA BAY COMMUNITY
HOMEOWNERS ASSOCIATION, INC., *et al.*,

      Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT EMANUEL MANAGEMENT SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** comes before the Court on the Motion for Summary Judgment filed by Defendant Emanuel Management Services, LLC ("EMS") on August 14, 2015 [DE 279]. The Court has carefully reviewed the motion, the response [DE 304], the reply [DE 326], and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion [DE 279] is **GRANTED** in part and **DENIED** in part.

          **I.**    **INTRODUCTION**

This is an action for discrimination on the basis of familial status in the rental of housing in violation of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the Florida Fair Housing Act, Fla. Stat. § 760.20 *et seq.* Plaintiffs include the Fair Housing Center of the Greater Palm Beaches, Inc. (the "Fair Housing Center") and a number of current and former residents of the Sonoma Bay and Marsh Harbour condominium developments, both of which are located in Riviera Beach, Florida. Following the dismissal of various parties named and claims asserted in this action, the remaining Defendants relevant to EMS's Motion for Summary Judgment are: (1)

1

Sonoma Bay Community Homeowners Association, Inc. ("Sonoma Bay HOA"), the entity responsible for the operation and management of the Sonoma Bay condominium development, including the creation and execution of the development's Rules and Regulations and the approval or denial of Rental Applications; (2) Jeanne Kulick, who served as president of the Sonoma Bay HOA from 2010 until the 2015 annual election, was elected vice president at the 2015 annual election, and has since returned to the position of president; and (3) EMS, a property management company whose principal, Niambi Emanuel ("Emanuel"), served as the licensed community association manager ("LCAM") for the Sonoma Bay condominium development from July 2012 through March 2014. EMS, a Florida limited liability company, was formed by Emanuel in 2012, when she began serving as the LCAM for Sonoma Bay, because Sonoma Bay preferred to hire a company rather than an individual. DE 278 at ¶ 5; DE 304 at ¶ 5; DE 278-1 (Emanuel Depo.) at 23-25. Any liability attaching to EMS in this case arises from the acts of Emanuel, in her role as the LCAM at Sonoma Bay.

In their Second Amended Complaint, Plaintiffs allege violations of three provisions of the federal Fair Housing Act and three nearly identical provisions of the Florida Fair Housing Act.[1] *See* DE 93. In relevant part, these provisions make it unlawful to: (i) refuse to rent after the making of a bona fide offer, or refuse to negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of familial status;[2] (ii) discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status;[3] or (iii)

---

[1] "Florida's Fair Housing Act is the state counterpart to the Federal Fair Housing Act Amendments. The FFHA is patterned after the FHA and courts have recognized that it is to be construed consistently with federal law." *Milsap v. Cornerstone Residential Mgmt., Inc.*, No. 05-60033-CIV-JOHNSON, 2010 WL 427436, at *2 (S.D. Fla. Feb. 1, 2010) (citing *Dornbach v. Holley,* 854 So. 2d 211, 213 (Fla. Dist. Ct. App. 2002); *Loren v. Sasser,* 309 F.3d 1296, 1300 n.9 (11th Cir. 2002)).
[2] *See* 42 U.S.C. § 3604(a); Fla. Stat. § 760.23(1).
[3] *See* 42 U.S.C. § 3604(b); Fla. Stat. § 760.23(2).

make, print, or publish, or cause to be made, printed, or published, any notice, statement, or advertisement with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation or discrimination.[4]

Specifically, Plaintiffs allege that Defendants' policies and practices—including the use of Rental Applications that require prospective tenants to submit report cards for persons under the age of 18, and the enactment and enforcement of certain Rules and Regulations concerning the attire and behavior of persons under the age of 18—constitute discrimination against families with children in violation of these statutory provisions. *See* DE 93. In addition to monetary damages and other forms of relief, Plaintiffs request entry of a declaratory judgment finding that Defendants are in violation of the federal Fair Housing Act and the Florida Fair Housing Act; entry of an Order requiring each Defendant to take appropriate actions to ensure that the activities complained of are completely stopped immediately and not engaged in again by it or any of its agents; and entry of a permanent injunction directing Defendants and their directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described in Plaintiffs' Second Amended Complaint, including but not limited to prominent notice to all tenants and homeowners correcting any and all related unlawful provisions in their leases and ownership documents, and to prevent similar occurrences in the future.[5] *See* DE 93 at 27–28.

---

[4] *See* 42 U.S.C. § 3604(c); Fla. Stat. § 760.23(3).
[5] In a civil action brought pursuant to the federal Fair Housing Act, the Court may grant as relief "any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)" upon finding that a discriminatory housing practice has occurred or is about to occur. *See* 42 U.S.C. § 3613(c). Similarly, in a civil action brought pursuant to the Florida Fair Housing Act, the Court "shall issue an order prohibiting the practice and providing affirmative relief from the effects of the practice, including injunctive and other equitable relief . . . ." *See* Fla. Stat. § 760.35(2).

In its Motion for Summary Judgment, EMS argues that it cannot be liable for any Fair Housing Act and Florida Fair Housing Act violations that occurred as a result of Sonoma Bay's policies, because Plaintiffs are relying solely on EMS's status as Sonoma Bay's agent, rather than on any specific actions taken by Emanuel on behalf of EMS. *See* DE 279.

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.*

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

## III.   LEGAL ANALYSIS

### A. Agent Liability under the Fair Housing Act

"[A]n action brought for compensation by a victim of housing discrimination [under the Fair Housing Act] is, in effect, a tort action." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Thus, traditional common law principles of vicarious liability apply to such claims. *Id.* at 290-91. Under the common law,

> An agent has no obligation to carry out his principal's order to do an illegal act. Restatement (Second) of Agency s 411 (1958). Indeed, except in certain

4

circumstances not relevant to this case, "(a)n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal". Id. s 343. Furthermore, an agent who assists his principal in committing a tort is himself liable as a joint tortfeasor. Id.

*Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562 (5th Cir. 1979).[6]

However, "[t]he principle of vicarious liability flows 'upward,' not 'downward.' Thus, an agent is not liable simply because his principal violates the Fair Housing Act." Housing Discrimination Law and Litigation § 12B:2; *see Green v. Century 21*, 740 F.2d 460, 465 (6th Cir. 1984) (finding jury instruction erroneous because "[t]he law does not . . . make the two sales agents liable for discriminatory acts by their principals"); *see also Douglas v. Metro Rental Servs., Inc.*, 827 F.2d 252, 254 (7th Cir. 1987) (finding two judgments imposing Fair Housing liability on principal corporation, but not on its agent and president, were not inconsistent because "[o]ne can speculate as to how the supposed inconsistency between the two judgments might be explained," such as, *inter alia*, that the corporation "had a policy of racial discrimination set by its board of directors"). Accordingly, "agents such as property managers can be held liable when they have 'personally committed or contributed to a Fair Housing Act violation.'" *Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*, 6 F. Supp. 3d 1272, 1293 (S.D. Fla. 2014) (quoting *Falin v. Condo. Ass'n of La Mer Estates, Inc.*, 2011 WL 5508654, at *3 (S.D. Fla. Nov. 9, 2011)); *see also Andujar v. Hewitt*, Case No. 02 CIV. 2223, 2002 WL 1792065, at *10 (S.D.N.Y. Aug. 2, 2002) ("Aggrieved persons have long been permitted to assert Fair Housing Act claims against individual defendants who engaged in affirmative acts of discrimination or enforced a corporation's discriminatory rules or policies.").

---

[6] In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**B. The Report Card Requirement**

Beginning sometime in 2010 or later, Rental Applications for Sonoma Bay condominium development included a requirement that prospective tenants provide copies of report cards for persons under the age of 18 (the "Report Card Requirement"). DE 302-2(E); *see* DE 304 at 5. Plaintiffs contend that the Report Card Requirement violates 42 U.S.C. § 3604(a) and Fla. Stat. § 760.23(1) because, they argue, it amounts to a refusal to rent, or a refusal to negotiate for the rental of, a dwelling on the basis of familial status. *See* DE 303 at 5.

It is undisputed that Emanuel, acting on behalf of EMS, did not have any substantive role in determining whether a rental application would be denied; those decisions were made by a screening committee appointed by Kulick, then the Sonoma Bay HOA president. DE 278-1 (Emanuel Depo.) at 72:15-20, 73:1-18; DE 278-2 (Larkins Depo.) at 123:13-19. Emanuel would provide prospective tenants with blank rental applications and accept completed rental applications, which were required to be submitted in person. DE 278-1 (Emanuel Depo.) at 75:1-13. Emanuel would check to see that all of the required documents, such as the report card, were attached to the application; if a document was missing, Emanuel would either inform the applicant or sometimes submit the incomplete application to the screening committee, noting the missing document. DE 278-1(Emanuel Depo.) at 73:19-74:19. Emanuel testified that she never refused to send an application to the committee based on a failure to include a report card. DE 278-1 (Emanuel Depo.) at 76:2-7, 80:15-18. If applicants called her to ask about the status of their pending application, she would tell them the application was being reviewed by the screening committee, and if denied applicants called to ask why they had been denied, she would truthfully tell them that she did not know. DE 278-1 (Emanuel Depo.) at 75:4-14, 76:8-24. Emanuel testified she was familiar with the Fair Housing Act, and on one occasion mentioned to

6

Kulick that the "birth certificates and report cards" requirement in the rental application "could be [a] familiar [sic] status" violation. DE 278-1 (Emanuel Depo.) at 164:13-168:4. Kulick responded that the requirement would remain in the application. DE 278-1 (Emanuel Depo.) at 164:22-168:4.

Viewing the evidence in the light most favorable to the Plaintiffs, as the non-moving party, no reasonable trier of fact could conclude that Emanuel assisted or contributed to any violation arising from this requirement. First, there is no evidence that Emanuel actually enforced the report card requirement by refusing to submit an application to the screening committee due to the lack of a report card. Second, Emanuel's involvement in the application process was purely ministerial. If a decision was made to reject an application based on the applicant's failure to provide a report card, Emanuel would not have taken part in this decision or even been aware that this was why the application was rejected.

The issue presented by EMS's argument is analogous to *Sabal Palm*. There, the court found that although the board member of an association was liable for the association's Fair Housing Act violation (a failure to accommodate plaintiff's disability) because he "personally contributed" to the violation by voting against accommodating the disability, the association's attorney could not be liable:

> It is undisputed that Trapani is just Sabal Palm's attorney. *He has no authority to vote—and did not in fact vote—on Sabal Palm's decision to sue [the plaintiff] instead of simply granting her requested accommodation.* The decision to not affirmatively allow [plaintiff] to keep [her service dog] as an accommodation— i.e., constructive denial through delay and unreasonable requests for information—is the basis for Sabal Palm's liability. . . . Trapani had nothing to do with that decision. Even if he rendered advice that [the plaintiff] was either not or likely not entitled to an accommodation—advice that admittedly would be very bad—that advice is not unlawful discrimination. That occurred when Sabal Palm acted on that advice and voted to not grant [the plaintiff's] accommodation request. *Because Trapani had nothing to do with that vote and had no authority over Sabal Palm's decision, the unlawful action was fundamentally Sabal Palm's,*

7

> *not Trapani's.* Silvergold, on the other hand, affirmatively voted to deny Deborah's accommodation request and sue instead. That's why Silvergold is liable and Trapani isn't.

*Id.* at 1293-94 (emphasis added). Although *Sabal Palm* did note the policy concerns implicated by holding an attorney liable for legal advice, the decision turned on the fact that Trapani "had no authority over Sabal Palm's decision," which meant "the unlawful action was fundamentally Sabal Palm's, not Trapani's." *Id.* at 1294.

Here, like Trapani, Emanuel and EMS had no authority over Sonoma Bay's decision to allegedly deny Plaintiffs housing on the basis of familial status under 42 U.S.C. § 3604(a), because Emanuel had no authority to grant or deny applications; her role was purely ministerial. *See id.; see also Dillon*, 597 F. 2d at 562-63 (holding that seller's agent could be liable for seller's racially motivated refusal to sell home, because agent knew of improper motive and lied to plaintiffs about it, which "assist[ed] [the seller] in committing" the violation; but finding developer could not be liable because it "had no legal authority to control the efforts of [the seller] and [the seller's agent]"); *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 240 (E.D.N.Y. 2011) (denying motion to dismiss because "[a]lthough [defendant] acted as a conduit of information between the Board, Co–Op and plaintiff, he was also alleged to be 'actively involved in advising and discussing applications for unit purchases (including [plaintiff's])' with the Board"). *Cf. Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 531 (5th Cir. 1996) (interpreting plain language of § 3604(f)(1), which outlaws denial of housing because of handicap, and holding "It is axiomatic that for an official to make a dwelling unavailable, that official must first have the authority and power to do so. In other words, the official must be in a position to directly effectuate the alleged discrimination.").

Plaintiffs cite several cases that, they argue, stand for the proposition that a purely ministerial act is sufficient to establish liability under the Fair Housing Act. *See Falin v. Condo.*

8

*Ass'n of La Mer Estates, Inc.*, Case No. 11-61903-CV, 2011 WL 5508654, at *3 (S.D. Fla. Nov. 9, 2011) (denying motion to dismiss by defendant community association's manager, where complaint alleged the manager "wrote the denial letter on behalf of [the association] and the letter reconfirming the denial, both with knowledge that a[n] [FHA] issue had been raised"); *Beck Royale Harbour of N. Palm Beach Condo. Ass'n*, Case No. 14-80611-CIV, 2014 WL 4782962, at *4 (S.D. Fla. Sept. 3, 2014) (denying motion to dismiss claim under § 3604(c), where "[p]laintiffs allege that [defendant property manager] drafted two letters to the [owners] stating that the [defendants] could not live in the Property because of the [defendants'] household size"); *Hous. Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Ass'n*, 510 F. Supp. 2d 1003, 1014 (S.D. Fla. 2007) (denying motion to dismiss claim against property manager, where plaintiff alleged manager had personally implemented and enforced all of the discriminatory rules and regulations with knowledge of their illegality). However, contrary to Plaintiffs' assertions, these cases dealt with motions to dismiss, not motions for summary judgment. *See* DE 303 at 8. While such allegations may be sufficient to survive a motion to dismiss under the "plausibility standard" applied at the dismissal stage, the Court concludes that Emanuel's minimal, ministerial involvement is insufficient to establish liability at the summary judgment stage. *See Beck*, 2014 WL 4782962, at *4 ("Those allegations establish a plausible claim . . . . As the action progresses, Plaintiffs may fail to prove any liability on [defendant's] part.").

EMS is not liable for any violations arising from the Report Card Requirement, and therefore its Motion for Summary Judgment [DE 279] is **GRANTED** as to Plaintiffs' claims against EMS based on Sonoma Bay's Report Card Requirement.

**C. The Proper Attire Rule, the Loitering Rule, and the Curfew Rule**

Beginning sometime in 2010 or later, the Rules and Regulations for the Sonoma Bay and condominium development required (1) that all residents wear proper attire when walking on the streets of the development, no boys should be shirtless, and girls must wear a cover up over a bathing suit when walking to the pool (the "Proper Attire Rule"), (2) that there would be no loitering—congregating on the streets of the development—at any time (the "Loitering Rule"), and (3) that persons under the age of 18 must be in their home or on their patio after sunset (the "Curfew Rule"). *See* DE 93-4 at 3-4. Plaintiffs contend that the Proper Attire, Loitering, and Curfew Rules violated 42 U.S.C. § 3604(b) and Fla. Stat. § 760.23(2) because, Plaintiffs argue, they amounted to discrimination in the terms, conditions, or privileges of rental, or in the provision of services or facilities in connection therewith, because of familial status. *See* DE 303 at 6.

Emanuel testified that one of her duties as property manager was to enforce Sonoma Bay's Rules and Regulations. DE 278-1 (Emanuel Depo.) at 83:14-20, 84:12-15. Both she and Kulick would issue notices of violations to tenants, and the majority of these were issued by Emanuel. DE 278-1 (Emanuel Depo.) at 95:20-25, 96:1-15. For violations Emanuel witnessed herself, she did not need authorization from Kulick to issue a notice of violation; she also had discretion to issue a verbal warning instead of a notice of violation. DE 278-1 (Emanuel Depo.) at 100:1-104:18, 174:15-19. Emanuel estimated that she sent out about 20 notices of violation per month. DE 278-1 (Emanuel Depo.) at 133:4-9. Plaintiffs have provided several notices of violation signed by Emanuel for violations of the Proper Attire, Loitering, and Curfew Rules. *See* DE 304-5 at 9, 15, 20-22, 24. Thus, the undisputed evidence establishes that Emanuel had the

power and authority to issue notices of violations for the challenged rules, and did so on at least several occasions.

EMS argues that this evidence is insufficient because there is no evidence that Emanuel, acting on EMS's behalf, "committed any discriminatory housing practices *against any of the individual Plaintiffs.*" DE 326 at 7 (emphasis added). The Court finds that there is a dispute of fact in the record on this point. In all but one of the notices of violation signed by Emanuel, the recipients' names are redacted, so it is not clear whether the notices were issued to the Plaintiffs. *See* DE 304-5 at 9, 15, 20-22, 24. Plaintiff and former Sonoma Bay resident Brenda Bluntson testified that Emanuel was present on one occasion when the Proper Attire Rule was enforced against her grandchildren, although Kulick rather than Emanuel spoke to Bluntson. *See* DE 278-9 at 58:10-62:1; 132:4-13. Plaintiff and former Sonoma Bay resident Leann Carr testified that she was called to the management office to discuss a notice of violation she received regarding her grandson's violation of the Loitering Rule, and Emanuel "read [her] the rules and regulations." DE 304-6 at 125-26; *see also* DE 93 at ¶ 70.

At this stage, viewing the evidence in the light most favorable to Plaintiffs, there is evidence from which a reasonable jury might conclude that Emanuel "'personally committed or contributed to a Fair Housing Act violation'" by enforcing Sonoma Bay's allegedly discriminatory policies. *Sabal Palm*, 6 F. Supp. 3d at 1293 (quoting *Falin*, 2011 WL 5508654, at *3); *see, e.g., Marthon v. Maple Grove Condo. Ass'n*, 101 F. Supp. 2d 1041, 1053 (N.D. Ill. 2000) ("[T]he truth–'truth' in the limited sense of a Rule 56 motion, where the nonmovants . . . are entitled to the most favorable view of the evidence, coupled with all reasonable inferences– lies somewhere between [the parties'] perspectives. . . . [I]n this instance a reasonable factfinder could view [property manager's] statements and actions as supporting an adverse ruling as to

[the management company] (not just by a kind of untenable topsy-turvy respondeat inferior notion).").

Accordingly, it is hereby **ORDERED AND ADJUDGED** that EMS's Motion for Summary Judgment [DE 279] is **DENIED** in part as to Plaintiffs' claims against EMS based on Sonoma Bay's Proper Attire, Loitering, and Curfew Rules, and **GRANTED** in part, as to Plaintiffs' claims against EMS based on Sonoma Bay's Report Card Requirement.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 1st day of October, 2015.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record